INTERNATIONAL BROTHERHOOD
OF POLICE OFFICERS, LOCAL
NO. 302 Officer Stephen B. Alfonso

v.

TOWN OF PORTSMOUTH.

No. 85–72–Appeal.

Supreme Court of Rhode Island.

March 19, 1986.

Terrance Turner, Nat. Ass'n of Governmental Workers, Cranston, for plaintiff.

Richard S. Humphrey, Tiverton, for defendant.

OPINION

KELLEHER, Justice.

On November 14, 1984, the chief of the Portsmouth police department notified Officer Stephen B. Alfonso (Alfonso) that he was suspending Alfonso for one day without pay. According to the chief's written notification, Alfonso had been ordered on November 5, 1984, to report at 6 a.m. on November 6, 1984, a presidential election day, to the board of canvassers' office to pick up voting lists and transport them to the polls at the Hathaway School, where he was to remain until 2 p.m., at which time he would be relieved. On election day Alfonso reported for duty at 6 a.m. at the school but failed to pick up the voting lists. According to the chief's communication, Alfonso's failure to appear at the board of canvassers stemmed from his belief that his automobile should not be used to transport the board of canvassers' records.

When Alfonso received notice of the one-day suspension and the loss of pay, he wrote to the chief of police and asked that a "hearing committee" be organized. He also took issue with the chief's factual assertions. The formation of the committee is authorized by G.L. 1956 (1984 Reenactment) § 42–28.6–1. The statute authorizes the formation of a committee consisting of Rhode Island law-enforcement officers, with the exception of individuals holding the rank of chief or its equivalent. One member is selected by the chief or the highest ranking officer of the particular agency. The officer chooses a representative, and if the two selectees cannot agree on a third member, the choice is to be made by the Superior Court presiding justice upon application of the selectees. Here the selectees chose the third member.

A hearing committee was formed to consider Alfonso's complaint, which indicated that the suspension was "unreasonable"

and the facts giving rise to the sanction were in dispute. The committee consisted of Alfonso's attorney and his two brother officers—a lieutenant (the chief's choice) and a detective.

On November 28, 1984, the chief notified the committee that he was, on the advice of counsel, denying Alfonso's hearing-committee request, discontinuing any further proceedings, and revoking the appointment of the lieutenant because the chief had been advised that Alfonso's one-day suspension without pay constituted "summary punishment" as that term is used in § 42–28.6–13(A) and (B). These subsections emphasize that the so-called law-enforcement-officers'-bill-of-rights legislation was never intended to prohibit summary punishment by a police chief. Summary punishment is described as a two-day suspension without pay, imposed for minor violations of departmental rules and regulations involving an incident in which the facts are not in dispute. If the aggrieved officer believes the punishment to be unreasonable, he may "appeal such punishment directly through the provisions of this subtitle."

The single issue before us comes about because of what occurred in December 1984. On December 13, 1984, the assistant town solicitor for Portsmouth was in the Newport County Courthouse when he was approached by a Portsmouth police detective who gave him a large manila envelope. When the solicitor opened the envelope, he found a copy of a bill of complaint that had been filed that day against the town by the union and Alfonso. The gist of a somewhat ambiguous complaint was a prayer that the court grant a bill-of-rights hearing. The town responded to the complaint by filing a motion to dismiss the complaint because of insufficiency of service and a failure to join an indispensable party.

On January 7, 1985, when the case came on for hearing, the trial justice noted, "I really can't find anything in the file to show that there was any service upon anyone to commence this action." The attorney for plaintiffs explained that plaintiffs were pressed for time and that it was delivered to the solicitor. The trial justice went on to say that he was "more concerned with substance rather than form" and that in his mind there was no question that Alfonso was entitled to have a hearing before a board. On January 23, 1985, a judgment was entered remanding the controversy to the Portsmouth police department for a hearing pursuant to the pertinent provisions of chapter 28.6 of title 42 and ordering the town "to initiate said proceedings within seven days of the hearing date."

■ Alfonso, in relying upon the courthouse delivery of the complaint, refers us to *Marteg Corp. v. Zoning Board of Review of Warwick*, 425 A.2d 1240, 1242 (R.I. 1981), where we again noted that Super.R. Civ.P. 80(b) outlines a uniform appellate procedure to be followed by those who seek a Superior Court review of an administrative appeal. Earlier, in *Caran v. Freda*, 108 R.I. 748, 752, 279 A.2d 405, 408 (1971), we observed that the rule provides that notice of the appeal will be given by serving a copy of the complaint upon the agency and all other parties to the proceeding to be reviewed. Here, the litigation that was before the trial justice was not an administrative appeal.[1]

■ Alfonso also argues that the courthouse delivery was authorized by the terms of Rule 5. However, Rule 5 concerns the service of all pleadings subsequent to the original complaint. This rule, like Rule 80(b), is not of any assistance to Alfonso.

---

1. In our opinion, any officer aggrieved by the imposition of summary punishment may appeal such action by invoking G.L. 1956 (1984 Reenactment) § 42–28.6–12 and by filing an appeal in the Superior Court in accordance with G. L. 1956 (1980 Reenactment) § 45–20–1.1, which confers upon the justices of the Superior Court the powers of a super police commissioner. However, Alfonso apparently failed to take this route because § 45–20–1.1 also provides that an appeal will not stay the operation of any decision appealed from. Rather than suffer the suspension and loss of pay, he sought relief by the initiation of an independent civil action.

Here, he instituted an independent civil action in which he was seeking mandatory injunctive relief, which in actuality seeks a revocation of the chief's withdrawal of his appointment of the lieutenant as a member of the hearing panel. We have no doubt that once the solicitor received a copy of the complaint, shortly thereafter the town was aware of the litigation. Although the filing of the complaint may have initiated the suit, the service of process required by Rule 4 has never been effectuated.

Although Rule 4(d)(5) permits service of process upon a public corporation by delivering a copy of the summons and complaint to any officer, director, or manager thereof, assuming the assistant solicitor qualifies as one of the individuals named in this section, there has been no issuance of a summons. Thus, it is our belief that the motion to dismiss the complaint on the basis of insufficient service should have been granted.

■ A dismissal on the basis of insufficient service does not have the effect of res judicata. *School Committee of North Providence v. North Providence Federation of Teachers*, 122 R.I. 105, 109, 404 A.2d 493, 495 (1979). The dismissal is without prejudice to the plaintiff's right to file another complaint naming the proper party. We suggest that the proper party in this instance is Portsmouth's chief of police.

The town's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.