[No. B033238. Second Dist., Div. Two. May 8, 1989.]

JAMES L. HOLCOMB, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

James K. Hahn, City Attorney, Frederick Merkin and Robert Cramer, Assistant City Attorneys, for Defendants and Appellants.

Michael P. Stone and Stone & Healy for Plaintiff and Respondent.

OPINION

ROTH, P. J.—This appeal by the City of Los Angeles and its chief of police arises out of disciplinary proceedings initiated by the Los Angeles Police Department (LAPD) against respondent James L. Holcomb.

Holcomb is a Los Angeles Police Officer. On August 13, 1985, Lieutenant York of the LAPD sent a message to Holcomb and his partner, who were in a police vehicle, to return to the police station. Holcomb did not respond to the message or several others which were transmitted shortly thereafter. Ultimately, Holcomb arrived at the station 25 minutes after the initial request to return had been made. A meeting, in which four individuals participated, was conducted in the office of Lieutenant York to discuss the matter. Lieutenant York asked Holcomb several times why he had not responded immediately to the request to return to the station. Holcomb refused to answer the questions. Holcomb tape-recorded the entire meeting.

A personnel complaint was filed against Holcomb alleging insubordination because of his failure to answer Lieutenant York's inquiries. Pursuant to the procedures set forth in the Los Angeles Police Department Manual, an investigation was conducted. The complaint was sustained and the recommended discipline was suspension for five days. The chief of police reviewed the matter and suspended Holcomb for five days.

At that juncture, Holcomb had two alternatives pursuant to the terms of the Los Angeles City Charter: accept the imposed suspension or request a hearing before the LAPD's board of rights (Board). Holcomb elected the latter option.

Thereafter, a full-blown day long adversarial hearing was conducted before the Board. The board consisted of two watch commanders and one captain from the LAPD. A police officer appeared as Holcomb's "Defense Representative" and a lieutenant represented the LAPD.

The first issue litigated was whether or not Holcomb had "failed to comply with the direct order of Lieutenant M. York directing [him] to state

the reason [he] did not acknowledge a call to come to the station." Six witnesses, including Holcomb, testified and were cross-examined. Seven exhibits were introduced into evidence, including the tape recording of the conversation had between Holcomb and Lieutenant York. Apparently Holcomb had *not* made the tape recording available during the prior internal investigation of the matter. After taking testimony, reviewing the exhibits, and hearing argument, the Board unanimously concluded Holcomb had been insubordinate.

The second phase of the hearing concerned the appropriate punishment to be imposed. The Board reviewed Holcomb's personnel file, noting both prior discipline imposed as well as commendations received. Individual members of the Board engaged in lengthy colloquys with Holcomb about his work performance and attitude.[1] In the course of those discussions, Holcomb conceded that he had "been out of step" at times; that he had an abrasive personality; and that he had a personality conflict with his supervisors. After private deliberations spanning almost 40 minutes, Watch Commander Allen announced the Board's decision as follows: "Now it's time for us to express our rationale for the penalty we are recommending.

"We believe that the purpose of discipline is three-fold: It is designed first to bring about a change in the attitude or behavior of the concerned employee. Its secondary purpose is to assure other Department employees that similar acts of misconduct will be appropriately resolved. And finally, its purpose is to assure the general public that the Department is appropriately mindful of its disciplinary responsibility.

"One of the things we look at in determining our recommendation for penalty is whether the misconduct seems to be out of character or whether there appears to be a reasonable foreseeability of a continuing pattern. You have been disciplined twice for preventable traffic accidents and we don't view those occurrences as germane to this situation. In 1978 you were disciplined for discourtesy. In 1980, you were disciplined for acquiescing to your partner's misconduct. And in 1985, you were disciplined for being late to work on three occasions. While we don't find that disciplinary record commendable, neither do we view it with great alarm.

"*In our very lengthy examination of your personnel package, we made comments for the record expressing our concern about what we perceive as your attitude toward supervision. We are satisfied that we have a much better view of the entire situation and how it relates to you personally than the reviewers of fact had prior to this hearing.*

---

[1] One member of the Board commented: "This little session here lasted about 10 times as long as it ever has on the many Boards I have sat on. I hope it's of some value."

"In our view, you need to become more introspective and concentrate your considerable talent and energy toward meeting expectations rather than to continue your current habit of challenging supervisors at every turn. We noted during that same session, and you agreed, that if you were working for Ace Hardware, you would likely be fired. We have considerable investment in you, however, and choose to concentrate on your strengths and to hold out some hope for a beneficial change in your attitude. You must realize, however, that there comes a point, and you are now approaching that point, where the Department can justifiably ask whether your continued employment with the City is likely to be productive or advisable.

"We believe that discipline should be as severe as necessary and as light as possible. It is not our desire to alienate you or to detract from the possibility that you can begin to meet expectations through the appropriate channeling of your energy. We view your current difficulties as serious and entirely of your own making. We believe that we need to impose a harsh penalty so that you will realize the seriousness of your insubordination and realize the immediate need for a significant change in your attitude and behavior.

"Accordingly, it will be our recommendation to the chief of police that you be suspended without pay for a period of 15 days." (Italics added.)

The Board's recommendation was transmitted to the chief of police, who concurred in its proposal and ordered Holcomb suspended for 15 days.

To overturn the discipline, Holcomb initiated proceedings in the superior court. (Code Civ. Proc., § 1094.5.) He contended the evidence did not sustain the Board's finding and that, in any event, the imposition of 15 days' suspension, rather than the 5 days' suspension imposed after the LAPD's first investigation of the matter, was an illegal attempt to punish him for exercising his right to seek administrative review of the first decision to discipline him. The trial judge reviewed the record of the administrative proceedings and found the evidence was sufficient to support the Board's conclusion of insubordination. However, he agreed with Holcomb the increased punishment "denied him due process." Accordingly, he directed the LAPD to reinstate the original penalty of five days' suspension and awarded Holcomb costs and attorney's fees. The city and the chief of police have appealed from that decision.[2]

Section 202 of the Los Angeles City Charter sets forth a comprehensive scheme governing the discipline of police officers. The chief of police is

---

[2] By not filing a cross-appeal to contest the superior court's finding of sufficient evidence to sustain the charge of insubordination, Holcomb has conceded that issue.

permitted to suspend an officer for a period of up to 30 days after an internal investigation has been conducted in compliance with particularized procedural safeguards. That suspension decision is subject to the officer's right to seek a hearing before the Board of Rights. If the officer requests such a hearing, "such suspension shall thereupon automatically become a temporary relief from duty pending hearing and decision by the Board of Rights." (§ 202(2)(b) of the Los Angeles City Charter.)

The Board hearing is a de novo adversarial proceeding at which no reference is made to the evidence adduced in the course of the prior internal investigation. The Board's decision is based solely upon the evidence presented to it. A representative of the LAPD presents its case, following which the officer, through assistance of a "Defense Representative" tenders his/her version of the events. (§ 202(12) of the Los Angeles City Charter.)[3] The Board members actively participate, posing questions to the witnesses and each party's representative. (§ 202(9) of the Los Angeles City Charter.)[4]

If the Board thereafter finds the officer "guilty," the Board ". . . shall prescribe its penalty (by order in writing) of either suspension for a definite period not exceeding six (6) months with total loss of pay, and with or without reprimand; or reprimand without further penalty; or of removal from office or position. . . . [I]n prescribing such penalty the said board must look to the nature and gravity of the offense of which the accused has been found guilty and may at its discretion review the departmental personal [*sic*] history and record of such accused . . . ." (§ 202(12) of the Los Angeles City Charter.)

---

[3] Section 202(12) of the Los Angeles City Charter provides: "At such hearing the accused shall have the right to appear in person and by counsel or representative, or both, and make defense to such charge and may produce witnesses to testify in his behalf and cross-examine witnesses against him. The accused shall have the right and privilege to select and name any officer of the department of any rank not higher than the rank of Lieutenant (who is not otherwise disqualified by reason of prejudice or being a party to the action in any capacity) to act as defense representative. . . . . [I]t is hereby made the duty of such officer to use every legal means available and exercise the best efforts of which he is capable to defend the accused at such hearing. . . . . *The said Board of Rights shall, at the conclusion of the hearing, make its specific findings of 'guilty' or 'not guilty' (on each specific charge) which must be based upon the evidence adduced before it at such hearing and not otherwise . . . ."* (Italics added.)

These elaborate safeguards implement the charter's statement of policy that "[t]he right of an officer . . . . of the Police Department to hold his office . . . is hereby declared to be a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided." (§ 202(1) of the Los Angeles City Charter.)

[4] Section 202(9) of the Los Angeles City Charter provides, in part: " . . . [T]he Board of Rights . . . shall have the power to administer oaths and affirmations in any investigation or proceeding pending before said board, examine witnesses under oath, and compel the attendance of witnesses and the production of evidence before them . . . ."

The Board's decision constitutes a recommendation to the chief of police who may impose the suggested penalty or a lesser penalty; the chief, however, is precluded from imposing a punishment greater than the recommendation. (§ 202(13) of the Los Angeles City Charter.)

At bench, Holcomb does not assert there has been a violation of any of these procedures. Instead, he claims if an officer exercises his right to a hearing in front of the Board and the complaint is upheld, no punishment greater than that initially imposed by the chief of police may be given. However, the city charter explicitly empowers the Board of Rights to recommend a more serious punishment than that originally imposed as the right to a hearing in front of the Board is afforded an officer who receives less than a 30 days' suspension but the Board is permitted to prescribe a suspension period of up to 6 months. Thus, Holcomb was on notice the Board hearing could possibly result in a greater punishment depending upon the Board's evaluation of the seriousness of the offense and his personnel record.

To overcome the force of this charter provision, Holcomb cites to the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.).

■ The first question is whether this statutory scheme applies to the situation at bench. Government Code section 3304, subdivision (b) states no "punitive action" may be taken against an officer "without providing the officer with an opportunity for administrative appeal." Government Code section 3303 defines "punitive action" to include suspension. These provisions apply to the City of Los Angeles. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135-140 [185 Cal.Rptr. 232, 649 P.2d 874].)

Government Code section 3304 does not create the administrative appeal but merely requires the employing agency to provide such an appeal. (*Browning* v. *Block* (1985) 175 Cal.App.3d 423, 429 [220 Cal.Rptr. 763] [review den.].) Its purpose is to offer the aggrieved police officer an avenue to challenge a disciplinary decision which could result in disadvantage, harm, loss or hardship (see *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 683 [183 Cal.Rptr. 520, 646 P.2d 191]) by providing the officer with an opportunity to convince the employer to reverse its decision, either by demonstrating the falsity of the charges which led to the punitive action, or through presentation of mitigating circumstances. (*Baggett* v. *Gates, supra,* 32 Cal.3d 128, 140; *Browning* v. *Block, supra,* 175 Cal.App.3d at p. 430.)

As the initial five days' suspension imposed upon Holcomb was clearly a "punitive action" within the meaning of the statutory scheme and the only process available to him at that juncture to challenge the discipline was to request a hearing before the Board, we find said hearing was, within the context of this case, the required administrative appeal.[5]

The next question is whether Government Code section 3304, subdivision (a) has been violated. It states: "No public safety officer shall be subjected to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure."

Holcomb urged, and the superior court agreed, the statute had been violated because he had been subjected to punitive action for exercising his right to an administrative appeal as the Board recommended a greater punishment than that initially imposed by the chief of police.

We find absolutely nothing in the record to support the trial court's finding Holcomb was impermissibly penalized for availing himself of that right. Instead, the record of the administrative proceedings reveals the Board first found Holcomb "guilty" of insubordination after careful consideration of all the evidence, including his testimony and the tape recording of the conversation in which he refused to answer Lieutenant York's questions. As the Board noted, the tape recording had *not* been reviewed in the initial internal investigation of the matter as Holcomb apparently had not made it available prior to the hearing. The significance of the tape recording is patent. Its contents formed the factual basis of the insubordination charge. By listening to it, the Board could not only definitively resolve any disputes about what was said but it could also draw valid conclusions about Holcomb's attitude by hearing his voice.

Furthermore, the Board suggested its penalty after thoroughly reviewing Holcomb's personnel file and engaging in a lengthy discourse with him, in the course of which Holcomb conceded he had an "attitude problem." In sum, nothing in the record even begins to suggest the Board's recommenda-

---

[5] At the hearing conducted in the superior court, counsel for the city and its chief of police stated: "[W]e never intended to imply that the board of rights proceeding was not an administrative appeal pursuant to the public safety officers procedural bill of rights." However, on this appeal, the city and police chief equivocate as to exactly what aspect of the process is the administrative appeal.

tion of a 15 days' suspension was prompted by Holcomb's exercise of his right to the hearing as opposed to the particular facts of the case.

Holcomb has cited no decisional authority or legislative history to support his claim the enactment of Government Code section 3304, subdivision (a) was intended to destroy the powers granted by the city charter to the Board. Sound policy considerations and common sense preclude adoption of such a position given the actual contours of the hearing granted to him by the city charter. That is, while Holcomb's request for a Board hearing is the pragmatic equivalent of an administrative appeal of the chief of police's prior decision, it is not an appeal in the traditional mode whereby the reviewing tribunal is limited to canvassing the evidence already adduced and is bound by earlier factual determinations. Instead, the Board hearing is a de novo adversarial proceeding. In light of this circumstance, the city charter provision permitting the Board, if it finds the officer "guilty" of the charge(s), to recommend a potentially larger punishment is logical. Having had an opportunity to determine each witness's credibility, to examine evidence, and to review and discuss with the officer his personnel file, the Board is best suited to determine the appropriate sanction within the limitations set forth by the city charter.

■ In order to harmonize Government Code section 3304, subdivision (a) with these procedures, we therefore construe it to mean merely that the Board may not arbitrarily increase a punishment to retaliate against an officer for seeking a hearing. However, "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.) This rebuttable presumption affects the burden of proof (Evid. Code, § 660) and effectuates the policy of relieving governmental officials from having to justify their conduct whenever it is called into question. (*People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1128-1129 [203 Cal.Rptr. 196] [hg. den.].) Hence, if an officer believes the Board imposed a greater punishment as a vindictive measure, it is the officer's burden to establish that fact as "[t]he effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.) ■ At bench, the only evidence cited by Holcomb in that regard is that the Board recommended 15 days' suspension. As already explained, the record contains more than ample legitimate reasons for that decision. Holcomb has failed to carry his burden of proving by a preponderance of the evidence the nonexistence of the presumed fact. (155 Cal.App.3d at p. 1130.).

The judgment is reversed. Appellant to recover costs on appeal.

Compton, J., and Fukuto, J., concurred.