672 A.2d 639

**Charles R. BLONDELL**

v.

**BALTIMORE CITY POLICE DEPARTMENT.**

**No. 68, Sept. Term, 1995.**

Court of Appeals of Maryland.

March 8, 1996.

Reconsideration Denied April 10, 1996.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for petitioner.

Gary May, Assistant City Solicitor (Neal M. Janey, City Solicitor, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

In this case, we are asked to interpret §§ 727, 733, and 734A of the Law Enforcement Officers' Bill of Rights (LEOBR), which govern punishment for violations of police regulations.[1] The question presented is whether the LEOBR prohibits the Police Department from adding new charges against an officer after the officer rejects the Department's initial offer of punishment. We shall hold that in this case, the Department's decision to add a new charge did not violate the LEOBR.

## I.

In December, 1990, Captain Charles Blondell of the Baltimore City Police Department was accused of reporting a fabricated sexual harassment complaint against one of his subordinates. The Police Department's Internal Investigation Division (IID) conducted an investigation and concluded that Blondell knew the complaint lacked merit when he filed it. IID therefore sustained a charge of general misconduct against Blondell. Both IID and Blondell's commanding officer, Colonel Christian, recommended a severe letter of reprimand as punishment. On review, the Deputy Commissioner of the Administrative Bureau concluded that the offense warranted additional punishment, adding three days' loss of vacation leave to the penalty.[2]

---

1. Unless otherwise indicated, all cites herein are to Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.) Article 27, §§ 727–734D. The LEOBR is presently codified at Maryland Code (1957, 1991 Repl.Vol., 1995 Cum.Supp.) Article 27, §§ 727–734D. The provisions at issue in this case have not substantively changed from the 1991 version.

2. The Baltimore City Police Department regulations governing the administrative disciplinary process are contained in General Order 48–77, issued July 1, 1977. The Order provides that in cases where IID determines a complaint is "sustained," the accused officer's command-

On October 15, 1990, the Deputy Commissioner informed Captain Blondell of the findings of the IID investigation and offered him punishment of a severe letter of reprimand and three days loss of vacation leave if Blondell agreed to forego a hearing. *See* § 734D.[3] Blondell declined the offer, exercising his statutory right to a hearing under the LEOBR. *See* § 730(a); *see also Baltimore City Police Department, General Order 48–77,* at C–2 (July 1, 1977) (Annex C) [hereinafter *Gen'l Order 48–77* ].[4] In accord with police regulations, IID forwarded the case file to the Legal Affairs Division for review in preparation for the hearing. *See Gen'l Order 48–77,* at C–2 and H–1.[5] In conducting the review, Legal Affairs noted that

---

ing officer makes the initial recommendation of punishment, but the IID case file and the initial punishment recommendation then proceed through the chain of command to the Deputy Commissioner, who may accept or reject the initial penalty recommendation. *Baltimore City Police Department, General Order 48–77,* at C–1 (July 1, 1977).

3. Section 734D provides that "[a]ny officer may waive in writing any or all rights provided in this subtitle." Thus, an officer may always waive the right to a hearing and accept punishment.

4. Section 730(a) provides, in pertinent part, that:

(a) *Notice; record.*—If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except as provided under subsection (c) of this section and except in the case of summary punishment or emergency suspension as allowed by § 734A of this subtitle and before taking that action, *the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board.* The notice shall state the time and place of the hearing and the issues involved. (emphasis added).

5. Annex H of General Order 48–77, entitled "Office of Legal Advisor: Responsibility in Cases Under Internal Investigation," provides that:

Upon notification from the Deputy Commissioner, Administrative Bureau, that an Administrative Hearing is to be held as the result of an internal investigation, the Legal Advisor shall:
1. review the investigative file and proceed on its merits or request further investigation and/or clarification from IID;
2. upon the completion of the review of the entire investigation, prepare the appropriate departmental charges and specifications to support the charges;

Blondell had made several false statements in the course of the conduct that led to the general misconduct charge and, therefore, requested that IID conduct further investigation. At the conclusion of the investigation, IID recommended adding a charge of false statements to the charge of general misconduct. The Deputy Commissioner approved addition of the false statements charge. Legal Affairs notified Captain Blondell of the two charges against him on February 19, 1991.

On March 28, 1991, before any hearing board was convened, Captain Blondell filed a complaint and petition to show cause in the Circuit Court for Baltimore City pursuant to LEOBR § 734.[6] Blondell requested ex parte, interlocutory, and permanent injunctive relief to prevent the Police Department from proceeding with the hearing. Blondell contended that the Police Department's addition of the false statements charge after he had been offered what he termed "summary punishment" for the general misconduct charge violated §§ 727(d)(3) and 733 of the LEOBR. The Police Department moved for dismissal or, in the alternative, for summary judgment, but the Circuit Court denied the Department's motion.

The Circuit Court held a hearing on April 20, 1994, and denied Blondell's request for an injunction. At the conclusion of Captain Blondell's case, the trial judge granted the Police Department's motion for judgment because she concluded the

---

 3. upon the accused member's retention of either departmental or private counsel, review defense counsel's request for pertinent material and if deemed justified, provide defense counsel with appropriate applicable portions;
 4. set a date for the hearing consistent with the necessity to insure both a speedy hearing and due process;
 5. present the department's case before the Administrative Hearing Board.

 6. Section 734 provides that:
 Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

punishment offered to Captain Blondell was not summary punishment and, therefore, the statutory limitations on summary punishment did not apply. In explaining her ruling, the trial judge stated:

I find based on the evidence in this case that the punishment that was offered was not summary punishment, for a number of reasons[.] [F]irst of all, it is arguably not a minor infraction for which Detective Captain Blondell was investigated.... The Commissioner has not delegated the authority to anyone else. He retains the authority in himself. The offense is and remains in dispute. And the punishment was greater than the limitation that is placed on it in the summary punishment definition in section F of subsection 727. And what makes it greater is not the issue of whether a three day loss of vacation is greater or less than a three day suspension. But it's the fact that a severe letter of reprimand was recommended. That certainly is much greater than just a three day suspension or fine of $150.00. So in this case, I find that summary punishment was not invoked, and therefore, ... the hearing board of the department is not limited to recommending sanctions offered in the memorandum of October 18th, 1990.

The trial judge also concluded that Captain Blondell had not proven that the Department added the second charge in retaliation for his request for a hearing.

Blondell noted a timely appeal to the Court of Special Appeals. The intermediate appellate court affirmed the trial court's decision, concluding that the punishment offered to Blondell was not summary punishment because his offense was not "minor." *Blondell v. Baltimore City Police Dept.*, 104 Md.App. 69, 76, 655 A.2d 34, 38 (1995). The Court of Special Appeals also concluded that Captain Blondell had not met his burden of proving the Department's retaliatory motive under § 733. *Id.* at 79–80, 655 A.2d at 38–39; *see also DiGrazia v. County Executive*, 288 Md. 437, 448, 418 A.2d 1191, 1197 (1980) (employee must "show that the questioned conduct was a substantial or motivating factor" in the employer's decision).

We subsequently granted Blondell's petition for a writ of certiorari.

## II.

Captain Blondell contends that when an officer rejects an offer of summary punishment, the Chief of Police must form a hearing board pursuant to § 727(d)(3) of the LEOBR.[7] Section 727(d)(3) limits the penalty that the hearing board may impose to the maximum penalty available for summary punishment, *i.e.,* up to three days suspension without pay or a fine of $150. Blondell argues that the punishment offered to him by the Police Department was summary punishment. Therefore he concludes that a hearing board may not impose a penalty on him that exceeds the maximum penalty available for summary punishment. He asserts that by adding a false statement charge to the initial charge of general misconduct, the Police Department subjected him to punishment that could exceed the summary punishment limits, violating § 727(d)(3) of the LEOBR. Blondell also argues that the Department added the false statement charge in retaliation for his decision to request a hearing, violating § 733 of the LEOBR.

The Police Department contends that its initial offer of punishment to Captain Blondell did not constitute summary punishment. Therefore, the Department argues, the statutory limitation on penalties for summary punishment does not apply. In addition, the Department contends that even if the initial offer did constitute summary punishment, the penalty cap does not automatically apply in all cases where an officer rejects summary punishment.

---

**7.** Section 727(d)(3) provides that:

If a law enforcement officer is offered summary punishment imposed pursuant to § 734A and refuses, the chief may convene a one-member or more hearing board and the hearing board *shall have only the authority to recommend the sanctions as provided in this subtitle for summary punishment.* If a single member hearing board is convened, that member need not be of the same rank. However, all other provisions of this subtitle shall apply.

(emphasis added).

The central statutory interpretation dispute in this case is whether, in addition to the method prescribed in § 727(d)(3), the Police Chief may also choose to form a hearing board under § 727(d)(1) in cases of summary punishment. The Department contends that it may proceed to hearing under either § 727(d)(1) [8] or § 727(d)(3). The penalty limitations only apply when the Chief of Police elects to proceed via § 727(d)(3) rather than § 727(d)(1). Since no hearing has yet been held in this case, and no choice has been made between the two hearing board mechanisms, the Department contends that no violation has occurred. Finally, the Department argues that Captain Blondell offered no proof of retaliatory motive, as required to demonstrate a violation of LEOBR § 733.

### III.

### A.

 In construing the LEOBR provisions at issue in this case, we apply the paradigm of statutory construction developed in numerous decisions of this Court. As we have often stated, "the cardinal rule of statutory construction is to ascertain and effectuate the legislative intention." *Fikar v. Montgomery County,* 333 Md. 430, 434, 635 A.2d 977, 979 (1994) (quoting *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990) (citations omitted)); *Police Comm'r v. Dowling,* 281

---

**8.** Section 727(d)(1) provides that:

["Hearing board" means:] A board which is authorized by the chief to hold a hearing on a complaint against a law enforcement officer and which consists of not less than three members, except as provided in paragraphs (2) and (3) of this subsection, all to be appointed by the chief and selected from law enforcement officers within that agency, or law enforcement officers of another agency with the approval of the chief of the other agency, and who have had no part in the investigation or interrogation of the law enforcement officer. At least one member of the hearing board shall be of the same rank as the law enforcement officer against whom the complaint has been filed.

Section 727(d)(1) does not impose any limitation on the penalty the hearing board may impose.

Md. 412, 418, 379 A.2d 1007, 1010 (1977). The primary indicator of the Legislature's intent is the language of the statute. *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995). We interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant. *Warsame v. State,* 338 Md. 513, 519, 659 A.2d 1271, 1273 (1995); *see also* 2A *Sutherland Statutory Construction* § 46.06, at 119–20 (5th ed. 1992 & 1995 Cum.Supp.). In addition, we construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme. *Warsame,* 338 Md. at 519, 659 A.2d at 1273 (citing *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993)); *see also* 2A *Sutherland Statutory Construction* § 46.05, at 103 (5th ed. 1992 & 1995 Cum.Supp.). If the statutory language, read in its entirety, is clear and unambiguous, and comports with the Legislature's purpose, we need not inquire further to discern the statute's meaning. *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991).

### B.

Applying these principles to the statutory provisions at issue in this case, we first observe that the purpose of the LEOBR is "to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal." *Abbott v. Administrative Hearing Bd.,* 33 Md.App. 681, 682, 366 A.2d 756, 757 (1976) (Eldridge, J., specially assigned), *cert. denied,* 280 Md. 727 (1977); *see also Chief, Mont. Police v. Jacocks,* 50 Md.App. 132, 135, 436 A.2d 930, 932 (1981); B. Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self–Incrimination,* 16 U.Balt.L.Rev. 452 (1987).[9] To effectuate this purpose, the

9. Maryland was the first state to enact a Law Enforcement Officers' Bill of Rights. B. Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self–Incrimination,* 16 U.Balt.L.Rev. 452, 452 (1987). Several other states have followed suit. *See, e.g.,* Cal.Gov't Code §§ 3300–

LEOBR guarantees police officers the right to a hearing when a departmental investigation results in a recommendation of punitive action.[10] The statute also states, however, that an officer may always waive the right to a hearing and accept punishment.[11] § 734D.

■ The LEOBR specifically provides for an expedited form of punishment known as "summary punishment," which is conditioned on the officer's waiver of the right to a hearing. §§ 727(f), 734A. Section 727(f) of the LEOBR defines "summary punishment" as:

> punishment imposed by the highest ranking officer of a unit or member acting in that capacity, which may be imposed when the facts constituting the offense are not in dispute. Summary punishment may not exceed three days suspension without pay or a fine of $150.

Section 734A further provides that:

> (1) Summary punishment may be imposed for minor violations of departmental rules and regulations when (i) the facts which constitute the minor violation are not in dispute; (ii) the officer waives the hearing provided by this subtitle; and (iii) the officer accepts the punishment imposed by the highest ranking officer of the unit to which the officer is attached.

*See Gen'l Order 48–77*, at C–1;[12] *see also Intern. Broth. Police v. Town of Portsmouth,* 506 A.2d 540, 541 (R.I.1986)

---

3311 (West 1995); Fla.Stat. § 112.532 (1995); Va.Code Ann. §§ 2.1–116.1 to 2.1–116.9 (Michie 1995). For a proposed model law, see Warnken, *supra,* at 513–37.

**10.** The LEOBR defines "hearing" as a "meeting in the course of an investigatory proceeding ... conducted by a hearing board for the purpose of taking or adducing testimony or receiving other evidence." § 727(e).

**11.** The LEOBR also permits punishment to be administered without a hearing if an officer has been charged with and convicted of a felony. § 730(c).

**12.** General Order 48–77 provides that:

(defining "summary punishment" under Rhode Island's LEOBR as "a two-day suspension without pay, imposed for minor violations of departmental rules and regulations involving an incident in which the facts are not in dispute."). If a police department offers summary punishment but the officer refuses it, however, the Department must hold a hearing. §§ 730(a), 734A.

## C.

Once the right to a hearing is triggered, the LEOBR provides three alternative procedures for forming a hearing board. The procedures that may be used to form the hearing board vary based on whether or not summary punishment has been offered and refused.

In cases that do not involve summary punishment, the Chief of Police typically proceeds to form a hearing board under § 727(d)(1). *See supra* note 8. Section 727(d)(1) requires the Chief of Police to select a hearing board composed of at least three members, including one member of the same rank as the accused officer. The members of the hearing board must not have taken part in the investigation or interrogation of the

---

Summary punishment may be imposed for minor violations of departmental rules and regulations when:
1. the facts which constitute the minor violations are not in dispute; and
2. the accused member waives the right to a hearing board; and
3. the accused member accepts the punishment *approved by the Police Commissioner;*
4. summary punishment may not exceed three days suspension without pay or a fine of $150.00 per Article 27 Section 727E. *Gen'l Order 48–77,* at C–1 (emphasis added). This description of summary punishment differs slightly from the statutory definition in § 727(f) of the LEOBR because under the Baltimore Police Department's regulation, the accused officer's unit commander does not have the authority to impose summary punishment. Instead, the commander may recommend punishment, but the Chief of Police retains ultimate authority to approve or reject the commander's recommendation. The regulation does not conflict with the LEOBR, however, because § 734A also states that "[t]he provisions of this subtitle are not intended to prohibit summary punishment ... by *higher ranking law enforcement officers* as may be designated by the head of a law enforcement agency." (emphasis added).

accused officer. The statute also provides a second alternative procedure for forming a hearing board as negotiated by collective bargaining, which is not in issue here.[13] § 727(d)(2).

The procedures for forming a hearing board differ in cases where summary punishment has been offered and refused. For example, § 727(d)(3) of the statute provides a method of forming a hearing board that may only be used in cases of summary punishment. Section 727(d)(3) provides, in pertinent part, that:

> the chief *may convene* a one-member or more hearing board and the hearing board shall have only the authority to recommend the sanctions as provided in this subtitle for summary punishment. If a single member hearing board is convened, that member need not be of the same rank [as the accused officer]. However, all other provisions of this subtitle shall apply.

(emphasis added). Furthermore, in summary punishment cases, unlike other cases, the police officer may not elect the alternate collective bargaining procedure for forming a hearing board. § 727(d)(2)(vii).

▆▆ We now turn to the central statutory interpretation dispute in this case: whether, in addition to the "one-member or more" hearing board under § 727(d)(3), the Police Chief may also choose to form a three-member hearing board under § 727(d)(1) in summary punishment cases, and thereby to proceed with no "cap" on the permissible punishment. We shall conclude that the statute does permit the Police Chief to choose between these two methods.

---

**13.** Section 727(d)(2) provides that if the accused police officer is a member of a unit that has designated an exclusive collective bargaining agent, and the collective bargaining agent has negotiated an another method of establishing a hearing board, the accused officer may choose between the three-person board described in § 727(d)(1) and the alternative board as defined by collective bargaining agreement. § 727(d)(2). In this case, the record does not indicate whether or not Officer Blondell is a member of a collective bargaining unit that has negotiated an alternative hearing board mechanism.

In construing the statute, we first consider its plain language. The language of § 727(d)(3) clearly indicates that in cases where an officer refuses summary punishment, the Chief of Police *may* convene a "one-member or more" panel. Because an officer who refuses summary punishment has an absolute right to a hearing under § 730(a), the use of the permissive word "may" in § 727(d)(3) suggests that another mechanism of creating a hearing board must also be available.

In addition, if the Legislature intended the method in § 727(d)(3) to be the exclusive method of forming a hearing board in summary punishment cases, and to thereby limit the penalty the hearing board can impose in all summary punishment cases, it would presumably have said so. For example, the Legislature could have revised § 727(d)(1), the provision which describes formation of three-member hearing boards, to indicate that the ordinary three-member board mechanism was no longer available in cases of summary punishment.[14] The Legislature did not limit § 727(d)(1) in this fashion, and we shall not interpret the statute to add a limitation the Legislature did not impose. *See Shah v. Howard County,* 337 Md. 248, 254–55, 653 A.2d 425, 428 (1995). Therefore, we

---

**14.** When the LEOBR was first enacted in 1974, it did not contain a provision for summary punishment. 1974 Md.Laws ch. 722. The Legislature amended the statute in 1975, adding provisions governing summary punishment. 1975 Md.Laws, ch. 809. Under the 1975 amendments, if an officer refused an offer of summary punishment, the only available method of forming a hearing board was the three-member or more board now described in § 727(d)(1). Subsequently, the Legislature amended the statute again in 1977 to provide for the "one-member or more" hearing board now described in § 727(d)(3). 1977 Md.Laws ch. 366. The amendment providing for the alternate method of forming a hearing board as determined by collective bargaining, now codified at § 727(d)(2), was added in 1989. 1989 Md.Laws ch. 516.

When the Legislature added § 727(d)(2), the General Assembly expressly stated that the collective bargaining method of forming a hearing board may not be used in cases of summary punishment. § 727(d)(2)(vii). If the Legislature believed that the language of the statute clearly indicated that only "one-member or more" boards, as described in § 727(d)(3), could be used in cases of summary punishment, the General Assembly presumably would not have added the limiting language to § 727(d)(2)(vii).

conclude that the Chief of Police may choose to convene a three-member board pursuant to § 727(d)(1) in summary punishment cases, and if the Police Chief does proceed under § 727(d)(1), there is no cap on the punishment the hearing board may impose.

We shall also construe the statute as a whole to determine its meaning. *Parrison v. State,* 335 Md. 554, 559–61, 644 A.2d 537, 539–40 (1994); 2A *Sutherland Statutory Construction* § 46.05, at 103 (5th ed. 1992 & 1995 Cum.Supp.). In describing the general procedure for forming a hearing board, § 727(d)(1) states that all hearing boards must "consist[ ] of not less than three members, except as provided in paragraphs (2) and (3) of this subsection." The structure of the statute thus indicates that the "one-member or more" board described in § 727(d)(3) serves only as an exception to the general requirement that a hearing board must include at least three members. We therefore determine that § 727(d)(3) was only intended to provide an additional hearing board mechanism in cases of summary punishment, not to displace § 727(d)(1).

We conclude that the Legislature intended to provide the Chief of Police with the administrative flexibility to permit increased punishment if additional violations came to light after an officer refused summary punishment. Because summary punishment offers are made based on preliminary investigation, prior to legal review and formal charging, additional violations may be discovered, as in this case, during follow-up investigation after summary punishment is rejected. *See Gen'l Order 48–77,* at H–1, *supra* note 5. *Cf. Holcomb v. City of Los Angeles,* 210 Cal.App.3d 1560, 259 Cal.Rptr. 1, 5 (App. 2 Dist.1989) (held permissible for hearing board to increase punishment from initial offer of five days' suspension to fifteen days' suspension based on new evidence presented at hearing that was not available during preliminary investigation). By permitting the Police Chief to choose between the three-person hearing board in § 727(d)(1) and the one-person or more hearing board in § 727(d)(3), the Legislature therefore allowed the Chief the discretion to determine whether or not

the summary punishment cap should apply after refusal of summary punishment.

Accordingly, we interpret the language of the statute to provide alternative methods of forming a hearing board depending on whether the department initially offered summary punishment. In cases where the department did not initially offer summary punishment, the police officer may choose between the ordinary mechanism for forming a three-member board under § 727(d)(1) and the collective bargaining method under § 727(d)(2). In summary punishment cases, the Chief of Police may choose between the three-member board under § 727(d)(1) and the "one-member or more" board under § 727(d)(3). We conclude that the statute expresses these alternatives in sufficiently plain terms that we need not seek extrinsic sources of information on the legislative intent. *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991); *Potter v. Bethesda Fire Dep't,* 309 Md. 347, 353, 524 A.2d 61, 63–4 (1987) (quoting *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976)).

### D.

In addition to providing police officers with the right to a hearing in disciplinary actions, as outlined above, the LEOBR further protects police officers by prohibiting the police department from retaliating against officers for exercising their statutory or constitutional rights. Section 733 of the LEOBR states that:

A law enforcement officer may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to his employment or be threatened with any such treatment, by reason of his exercise of or demand for the rights granted in this subtitle, or by reason of the lawful exercise of his constitutional rights.

The employee bears the burden of proving retaliatory action in violation of § 733. *DiGrazia v. County Executive,* 288 Md. 437, 448, 418 A.2d 1191, 1197 (1980). Specifically, the employ-

ee must "show that the questioned conduct was a substantial or motivating factor" in the employer's decision. *Id.,* 418 A.2d at 1197. If the employee meets this requirement, the burden shifts to the employer to prove by a preponderance of the evidence that the action or decision would have been the same absent the employee's exercise of or demand for his rights. *Id.,* 418 A.2d at 1197. Therefore, "[t]he issue is to be resolved in favor of the employee only if the court finds that he would have been reemployed but for the protected conduct." *Id.,* 418 A.2d at 1197–98 (citations omitted).

## IV.

### A.

 We next consider whether the addition of the "false statements" charge after Captain Blondell refused the initial offer of punishment violated the LEOBR provisions analyzed above. We shall first consider whether the Department's initial offer of punishment to Blondell constituted "summary punishment," applying the statutory definition of summary punishment described in Section III.B, *supra.*

 First, we observe that if an officer's offense is not minor, the Department may not offer summary punishment. § 734A. In this case, the conduct at issue was fabrication of a sexual harassment charge against a subordinate. We agree with the conclusion of the trial court and the Court of Special Appeals that this type of conduct could not plausibly be termed a "minor" offense.[15] *See Blondell v. Baltimore City Police Dept.,* 104 Md.App. 69, 76, 655 A.2d 34, 38 (1995). Therefore, the Department could not offer summary punish-

---

**15.** We observe that although the LEOBR does not define "minor offenses," the Baltimore City Police Department has issued General Order 48–77, entitled "Departmental Administrative Disciplinary Process," which describes summary punishment and, in a separate section, provides a non-exhaustive list of "minor offenses." *Gen'l Order 48–77,* at A–1, C–1. The General Order provides, in pertinent part, that:

When an alleged or observed infraction does not involve persons outside the department and is *of a minor nature,* commanding officers will not look to higher authority to initiate action. Such cases are the responsibility of the commanding officers to resolve and they will be

ment for this type of offense without violating both the LEOBR and its own regulations.

In addition, we agree with the trial court's conclusion that the punishment offered to Blondell exceeded the maximum penalty available for summary punishment. The Department offered Captain Blondell punishment of three days' loss of vacation leave plus a severe letter of reprimand. We need not determine whether three days' loss of vacation leave is equivalent to three days' suspension without pay, the maximum penalty available for summary punishment, because we conclude that the addition of a severe letter of reprimand increases the penalty beyond the summary punishment limitations.

---

expected to take necessary action without delay. *Examples of such cases include but are not limited to:*
 a. lateness,
 b. uniform and equipment violations,
 c. personal appearance infractions,
 d. minor omissions in assigned duties,
 e. minor infractions of departmental regulations concerned with efficiency or safety.

*Id.* at A–1 (emphasis added). Thus, although LEOBR does not define what constitutes a "minor" infraction, the Baltimore City Police Department has developed its own guidelines regarding what types of offenses should be deemed "minor."

As a general principle of administrative law, we have stated that:

In the matter of statutory construction it is well understood that the view taken of a statute by administrative officials soon after its passage is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons.

*Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181, 185 (1978) (*Holy Cross I* ), *rev'd in part on other grounds,* 290 Md. 508, 431 A.2d 641 (1981) (*Holy Cross II* ). Therefore, unless the agency's interpretation conflicts with the statutory language, we will often defer to an administrative agency's interpretation of a statute when their interpretation occurs soon after passage of the statute. *Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 14–15, 427 A.2d 979, 982 (1981).

In this case, the Department promulgated the portion of General Order 48–77 describing "minor violations" on July 1, 1977. The provisions of the LEOBR relating to summary punishment were enacted on May 15, 1975, and took effect on July 1, 1975. 1975 Maryland Laws ch. 809. We believe the agency's interpretation of the term "minor" was sufficiently proximate to enactment of the summary judgment provisions to warrant judicial deference. Moreover, the

The Police Department does not issue a severe letter of reprimand for every violation. Moreover, the Department uses two types of reprimand letters: an ordinary reprimand letter, which simply informs the officer of a violation, and a severe letter of reprimand, which advises the recipient that any future violation may result in dismissal. We therefore conclude that the combined punishment of a severe letter of reprimand plus three days' loss of vacation exceeds the maximum allowable summary punishment.

Based on both the nature of Captain Blondell's offense and the amount of punishment the Department initially offered him, we conclude that the Department's initial offer of punishment was not summary punishment.[16] Therefore, the hearing board was not limited to the maximum penalty available for summary punishment.

## B.

■■■ Even assuming, *arguendo*, that the initial punishment offered in this case was summary punishment, the officer's rejection of the offer would not necessarily limit the punishment a hearing board could impose to the maximum penalty available for summary punishment. When an officer rejects an offer of summary punishment, the LEOBR requires the Chief of Police to choose between two methods of proceeding to hearing. As discussed in Section III.B, *supra*, the Police

---

Police Department possesses relevant experience to determine what disciplinary problems should be deemed "minor."

**16.** The Police Department also contends that its initial offer of punishment to Blondell did not constitute summary punishment because Blondell disputed the facts, declined to waive his right to a hearing, and refused to accept the punishment offered. The Department misreads the statute. While summary punishment, as defined in §§ 727(f) and 734A of the LEOBR, requires that the facts must be undisputed, the officer must waive the right to a hearing, and the officer must accept punishment, these elements are not prerequisites to an *offer* of summary punishment, but rather, they are conditions that must be met before an offer of summary punishment may be executed. Section 734A provides that "summary punishment may be *imposed*" if these conditions are fulfilled, and we interpret "imposed" to mean "executed," not merely "offered."

Chief could proceed to form a hearing board under either the three-member hearing board mechanism described in § 727(d)(1) or the one-member or more mechanism in § 727(d)(3). If the Chief of Police elects to proceed under § 727(d)(3) rather than under § 727(d)(1), the hearing board may not impose punishment greater than the maximum allowable summary punishment, *i.e.,* three days' suspension without pay or a $150 fine. In comparison, if the Chief of Police elects to proceed under § 727(d)(1), the hearing board may impose any punishment up to and including termination.

Because the Chief of Police has discretion to proceed either under § 727(d)(1) or § 727(d)(3), hearing boards are not limited to the summary punishment penalties in all cases where an officer rejects an offer of summary punishment. The summary punishment cap does not apply unless the Chief of Police decides to proceed under § 727(d)(3). Since no hearing board mechanism had yet been selected when Captain Blondell instituted this action, the Police Department has not yet taken any action that would limit the penalty imposed by the hearing board to the maximum penalty available for summary punishment. Thus, the Police Department did not violate any provision of the LEOBR merely by deciding to add a false statements charge to Captain Blondell's offenses, which *might* have subjected him to punishment greater than summary punishment.[17]

## C.

Captain Blondell also contends that the Police Department decided to add a false statement charge against him

---

**17.** We acknowledge that the LEOBR provisions at issue here do not provide a police officer with notice, prior to the administrative hearing, of whether the Police Department's offer of punishment constitutes summary punishment. Furthermore, the Police Department's regulations also do not provide the officer with notice of what type of punishment he is being offered, because the same form may be used to offer the officer summary punishment or punishment greater than summary punishment. *See Gen'l Order 48–77,* at C–1–1 and C–2–1 (Form 77/175 and Form 77/402). Revising the regulations is a matter for the Police Department.

after he refused summary punishment in order to retaliate against him for exercising his statutory right to a hearing, in violation of § 733. We find little support for this argument in the record. Captain Blondell argues that the timing of the Police Department's decision to add another charge indicates that the action "smacks of retaliation." He also points to the testimony of Sergeant Puller, the IID detective who investigated his case, that the possibility of additional charges after refusal of summary punishment "could have [the] ... effect" of coercing officers to forego their right to a hearing.

We agree with the conclusion of the trial court and the Court of Special Appeals that Captain Blondell did not meet his burden of proving that his rejection of summary punishment was a "substantial or motivating factor" in the Department's decision to add the second charge. *See Blondell v. Baltimore City Police Dept.*, 104 Md.App. 69, 79–80, 655 A.2d 34, 38–39 (1995); *see also DiGrazia*, 288 Md. at 448, 418 A.2d at 1197. Captain Blondell's evidence merely suggests that the general practice of adding a new charge after an officer refuses summary punishment may, in theory, have coercive effects. He offered no evidence, however, that in his case, the Police Department's decision to add the false statement charge was motivated by his refusal of the Department's initial offer of punishment.

For all of the foregoing reasons, we conclude that the Police Department's disciplinary procedures in Captain Blondell's case did not violate the LEOBR.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*