## SNYDER *v.* STOUFFER

[No. 125, September Term, 1973.]

*Decided January 3, 1974.*

The cause was submitted on briefs to MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

Submitted by *Norman I. Broadwater* for appellant.

Submitted by *Elwood E. Hauver* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant Snyder was appointed Assignee for the benefit of the unsecured creditors of Herman Stouffer and his wife, Martha (the Stouffers), Holiday Acres, Inc. (Holiday), and Colonial Acres, Inc., corporations owned by the Stouffers. On December 28, 1972, he filed a petition in the Circuit Court for Washington County to sell assets of Holiday identified as a number of gold coins held in a safe deposit box in a Pennsylvania bank, allegedly registered in Holiday's name. The court passed an order on that date allowing the sale, and the coins were sold at public auction on February 23, 1973. On February 26, 1973, the Stouffers' son, the appellee Steven Stouffer, filed a petition praying that the sale of the coins not be ratified; he claimed that he was the owner of the coins and that they be declared his

exclusive property and returned to him; that, in the alternative, he be paid the proceeds of the sale and that the appellant be enjoined from delivering the coins until the issue of their ownership had been resolved. The court ordered Snyder to retain possession of the coins and trial was held on March 9, 1973. The evidence showed that the appellee was twenty years of age at the time of trial, that he had been an avid coin collector since his early youth, that his parents did not collect coins, and that Holiday was not in the business of coin collecting. The appellee, Mrs. Stouffer, and several other witnesses testified that the coins were given to the appellee on two occasions — the first at Christmastime, 1963, and the second on his birthday in March, 1964. Mrs. Stouffer testified that some of the coins were placed in the safe deposit box within a month after Christmas and that the remainder of the coins were placed in the box a "couple of weeks" after his birthday. The testimony revealed that for a brief period after receiving the coins, the appellee kept them in his room and was in the habit of showing them to his friends. Mrs. Stouffer testified that she didn't "think it was good to have . . . [the coins] . . . around the house" and that she put them in the safe deposit box because the family was "gone a good bit of the time" and the coins could be stolen. She also testified that she and her husband had paid for the rental of the safe deposit box. The court found that the Stouffers made gifts of the coins to their son at Christmastime, 1963, and on his birthday in March, 1964, that delivery of the coins was completed on those two occasions, and that the appellee was in possession of the coins for "some period of time thereafter." The court also concluded that the Stouffers were "merely acting for their minor son" in placing the coins in the safe deposit box for safekeeping and that they did not retain dominion over the coins in "any legal sense." The court ordered Snyder either to deliver the coins to the appellee or consummate the sale held on February 23 and deliver the proceeds to him. Snyder appealed to this Court from that judgment.

The appellant argues that the Stouffers' failure to relinquish their control over the coins precluded a valid *inter*

*vivos* gift to their son. He notes that although there were two keys to the safe deposit box, the appellee did not possess either of them. He argues that no evidence of the donors' intent at the time the coins came into appellee's possession was adduced at trial, and " [W]hatever it might have been, the evidence is that dominion over the same was not relinquished by the donor."

Appellee argues that the court was correct in finding a completed gift with the delivery of the coins to him in December, 1963 and March, 1964, and that the return of the coins to his parents for safekeeping did not affect his title thereto but rather gave rise to a trust relationship in his favor.

The requirements for a valid *inter vivos* gift are well-established under Maryland law. In *Berman v. Leckner*, 193 Md. 177, 182, 66 A. 2d 392, 393 (1949), we stated:

> "To make a valid gift *inter vivos*, there must be a clear intention on the part of the donor to transfer title to the property, and also a delivery by the donor and an acceptance by the donee. It is essential to the validity of such a gift that the transfer of both possession and title shall be absolute and shall go into immediate effect. In other words, the donor must intend not only to deliver possession, but also to relinquish the right of dominion ... the intention of the donor, however, need not be expressed in any particular form. It may be manifested by words or acts, or both, or may be inferred from the relation of the parties and the facts and surrounding circumstances of the case."

In *Pomerantz v. Pomerantz*, 179 Md. 436, 439-440, 19 A. 2d 713, 715 (1941), we noted:

> "It has been decided frequently by this court that to make a gift *inter vivos* perfect and complete there must be an actual transfer of all right and dominion over it by the donor and acceptance by the donee, or by some competent person for him,

and that the transfer of the gift should go into effect at once and completely. . . . The law will not recognize a gift where there is reserved to the donor, either expressly or as a result of circumstances, a power of revocation or dominion over the subject of the gift. . . . The delivery must be actual or constructive, in either case it must divest the donor completely of any dominion or control over it and transfer such dominion."

See, also, *Register of Wills v. Sterling*, 264 Md. 638, 287 A. 2d 771 (1972); *Schilling v. Waller*, 243 Md. 271, 220 A. 2d 580 (1966); *Hileman v. Hulver*, 243 Md. 527, 221 A. 2d 693 (1966); *Geisler v. Eminizer*, 240 Md. 72, 212 A. 2d 734 (1965); *Schenker v. Moodhe*, 175 Md. 193, 200 A. 727 (1938); *Brooks v. Mitchell*, 163 Md. 1, 161 A. 261 (1932).

We think the evidence was legally sufficient to support the court's holding that the Stouffers made completed *inter vivos* gifts of the coins to their son before he returned them for safekeeping. From the "facts and surrounding circumstances" shown by the record before us, the trial judge could properly conclude, as he did, that all elements of completed *inter vivos* gifts were present — that the Stouffers had the "clear intention" to transfer title to the coins to their son, that they relinquished control over them by making actual delivery of the coins to him, and that he accepted the gift. See, Md. Rule 886. We think it clear, therefore, that his return of the coins for safekeeping did not affect the validity of the gifts or his claim of title to them. See, 38 Am. Jur. 2d *Gifts*, § 27 (1968).

Appellant also urges that the court erred when it refused to permit him to introduce into evidence, over objection, a photostatic copy of the first page of the safe deposit box "ledger contract" on the ground that he failed to offer it in evidence through an employee of the bank or by the "keeper of the [Bank's] records." Appellant argues that, although hearsay, the copy was admissible under the "Shop Keeper's Rule," Maryland Code (1971 Repl. Vol.), Article 35, § 59, as there was "ample . . . evidence . . . that the lock-box . . . was in existence and that . . . [he] . . . visited the Bank and

obtained access to the lock-box in the presence of the Bank officials and was given by the officials a copy of the ledger sheet, and that the ledger sheet was in his possession and was the one which he sought to introduce into evidence." A proper foundation must be laid for the introduction of evidence under § 59 of Article 35, showing when the record was made, that it was made in the regular course of business, and that it was the regular course of business to make such record. See, *Smith v. Jones*, 236 Md. 305, 203 A. 2d 865 (1964). It is clear that the evidence was inadmissible as the appellant failed to authenticate the document or provide the requisite testimonial sponsorship necessary to demonstrate that it met the requirements for admissibility imposed by the statute.

> *Judgment affirmed; costs to be paid by appellant.*