786 A.2d 57

Timothy J. McCABE,

v.

MEDEX.

No. 80, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 4, 2001.

560

Jeffrey L. Forman (Bruce E. Kauffman and Kauffman and Forman, P.A., on the brief,) Towson, for appellant.

Jeffrey Pritzker (Jody Maier and Margolis, Pritzker & Epstein, P.A., on the brief,) Towson, for appellee.

Argued before DAVIS, ADKINS, PAUL E. ALPERT, (retired, specially assigned), JJ.

DAVIS, J.

Appellant Timothy J. McCabe filed suit in the District Court for Baltimore County, pursuant to the Maryland Wage Payment Collection Law, Md.Code (1999 Repl.Vol.), Lab. & Empl. (L.E.) §§ 3–501 to 3–509 (the Act), to recover unpaid commissions from his former employer, appellee Medex. Shortly thereafter, appellee requested a jury trial and the case was removed to the Circuit Court for Baltimore County. Upon receiving appellee's answers to interrogatories, appellant was able to ascertain the exact figure he was allegedly owed. Appellant, therefore, amended his complaint, seeking the sum of $36,450.73, plus $109,352.19 in treble damages, plus prejudgment interest, costs, and attorneys' fees.

Both parties filed cross-motions for summary judgment; both were denied. The parties then filed a Joint Motion to Bifurcate, requesting an initial ruling on the applicability of the Act, proceeding to trial only in the event the court found the Act prohibited appellee's conduct. The trial court found the Act inapplicable and entered judgment in favor of appellee. Appellant filed this timely appeal shortly thereafter.

■ Appellant raises one question on appeal, which we rephrase for clarity:

Does § 3–505 of the Act prohibit an employer from conditioning the payment of commissions, set forth in its commission schedule, upon the employee still being employed on the date of the payment, when that employee has met the requirements to receive the commissions?

We answer appellant's question in the affirmative and, therefore, remand the case to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Appellant began working for appellee as a sales representative in November 1998. According to appellee's Compensation Plan, appellant was to receive an annual salary of $49,000, plus commissions. The fiscal year at issue ran from February 1, 1999 through January 31, 2000. Pursuant to appellee's Employee Handbook, all commissions were "conditional upon meeting targets and the participant being an employee at the time of actual payment. If the participant [did] not meet both of the requirements, he or she [was] not eligible to receive payment." Appellant received a copy of the handbook and was made aware of the Incentive Pay Plan.

In December 1999, all sales representatives were informed that appellee was for sale, but that this fact did not change the conditions of the Incentive Pay Plan. Appellant voluntarily resigned on February 4, 2000, four days after the completion of Fiscal Year 2000. Appellee, however, had not yet calculated the amount owed to its representatives for sales completed during the fiscal year. Due to internal procedures, appellee did not schedule the payments of commissions earned during Fiscal Year 2000 until approximately March 31, 2000. Because appellant was not an employee of appellee on that date, he did not receive his commissions totaling $32,850.73.

## STANDARD OF REVIEW

We will not set aside the judgement of a trial court unless clearly erroneous. Md. Rule 8–131(c). Although this standard does not apply to a trial court's determination of legal questions or conclusions of law, *see Provident Bank v. DeChiaro Ltd. Partnership*, 98 Md.App. 596, 634 A.2d 973 (1993), mixed questions of law and fact are reviewable under the clearly erroneous standard, set forth in Rule 8–131(c).

*Space Aero Prod. Co. v. R.E. Darling Co.*, 238 Md. 93,, 208 A.2d 74 (1965) *cert. denied*, 382 U.S. 843, 86 S.Ct. 77 (1965).

## DISCUSSION

Appellant contends, as he did at trial, that, "if a person has performed all of the work necessary to entitle him [or her] to be paid certain amounts, and his [or her] employment terminates before those payments are made, then he [or she] must be paid those amounts, *whenever they are paid,* as if he [or she] were still employed." Because appellant completed the sales, ensured that the customers received the product, and secured payment from the customers, he contends that "nothing [he] could have done after January 31, 2000 would have impacted the calculation of the $32,850.73 in any way" and that "attaching an arbitrary payment date to them and then requiring people to remain employed through that arbitrary date ... [flies] in the face of the plain words of the statute."

Appellee counters that the commission payment date of March 31, 2000 was not an "arbitrary date," but that the "timing of the incentive payment was intended to incentivize the employee's continued employment. In other words, the employee had to remain employed with [appellee] to receive the incentive pay." Inherent in its argument is the view that this wage does not constitute a commission, *per se,* but, instead, it should be analogized to a holiday bonus, because payment served as a reward to appellant for staying through the payment date.

In its opinion dated February 20, 2001, the trial court agreed with appellee, finding the controlling statute to be § 3–505 of the Act, which states:

Each employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

Positing that L.E. § 3–505 is "entirely clear and unambiguous," the trial court reasoned that an employer must only pay those wages which are *due* and that "[i]ncentive pay is not due until all of the conditions for its payment are met." The court concluded that appellant failed to meet one of the two prerequisites to receiving his "incentive pay"—he no longer worked for appellee—and, as a result, the wage was not due. We disagree.

■ "[U]nder the Act, employees may have a cause of action based on an employer's failure to pay commissions that were earned during the employment, but which were not payable until after the employee was terminated." *Magee v. DanSources Technical Serv., Inc.*, 137 Md.App. 527, 574, 769 A.2d 231 (2001). Here, the employee had satisfied all of the requirements for receiving a commission except one—he was no longer employed there. In a situation such as this, the statute under consideration serves as guidance, as it clearly states that the employer must pay the employee for wages earned before the termination of his or her employment.

■ Although we agree that the words of § 3–505 of the Act are "clear and unambiguous," we hold the trial court's interpretation of the statute to be erroneous.

> A statute should be construed according to the ordinary and natural import of the language used *without resorting to subtle or forced interpretations for the purpose of limiting or extending its operation.* That is, we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute.

*Wheeler v. State*, 281 Md. 593, 596, 380 A.2d 1052 (1977) (citations omitted)(emphasis added). By singling out the word "due," and inventing its own definition for that word, the trial court failed to follow the basic principles of statutory construction. Pursuant to L.E. § 3–505, appellant's commissions were *due* on or before March 31, 2000, but that has no effect on appellant's eligibility for them. Appellant earned those commissions as wages under L.E. § 3–501(c), and the additional

conditions appellee placed on its employees were, therefore, invalid in light of Maryland statutory and common law.

Attempting to support its opinion with a distinction between "commissions" and "incentive pay," the trial court again engaged in improper statutory construction. Appellee utilizes similar semantics on appeal, maintaining that "the incentive pay was a mere gratuity," and that the money sought should be analogized to a bonus. We fail to comprehend the rationale behind either argument. Even if we were to label appellant's commissions as "incentive pay," such money would still constitute a "wage," which includes bonuses, commissions, fringe benefits, or "any other remuneration promised for service," pursuant to the broader definition included in § 3-501(c) of the modern Act. Clearly, incentive pay would constitute remuneration promised for service, because this pay was promised to appellant, as stated in paragraph five of appellee's Employee Handbook:

> Total Target Cash Compensation (TTCC) will be comprised of base compensation + incentive. TTCC is what you can earn if you achieve 100% of your performance goals.

The court found that, assuming, *arguendo*, appellant was entitled to commissions as opposed to incentive pay, "[t]he question of whether or not an employee is entitled to commissions after termination of employment is dependent upon the language of the contract," citing *Chesapeake Potomac Tel. Co. v. Murray*, 198 Md. 526, 84 A.2d 870 (1951). As appellant correctly points out, however, the Maryland Wage Payment and Collection Law, which governs the case *sub judice*, was enacted in 1991 and consequently superseded *Chesapeake*. In fact, the trial court supported the entirety of its findings with case law predating 1991, relying on *Chesapeake, supra*, as well as *Maryland Credit Fin. Corp. v. Hagerty*, 216 Md. 83, 139 A.2d 230 (1958). Interestingly, the court failed to rely on those cases that interpreted the Act. *See, e.g., Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 658 A.2d 680 (1995) (interpreting the meaning of "wage" under L.E. § 3-502); *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 745 A.2d 1026 (2000) (holding that commissions earned before termination,

but payable after termination, are clearly within the purview of the Act).

Contrary to the trial court's holding, a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy. *Danny Son v. Margolius, Mallios, Davis, Rider & Tomar,* 114 Md.App. 190, 216, 689 A.2d 645 (1997). The policy behind the Act was to give "the State the ability to litigate wage disputes on behalf of private citizens who were suffering the abuse of non-payment of wages from their employers." *Baltimore Harbor v. Ayd,* 365 Md. 366, 380, 780 A.2d 303 (2001). Labor & Empl. § 3–505 clearly states that an employer must pay an employee for all wages earned prior to the termination of his or her employment and the public policy for which it was enacted is to protect those employees from being overpowered by their employers. Any contract language in derogation thereof is invalid.

Appellee relies on the recent decision of the Court of Appeals in which Chief Judge Bell, in *Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 783 A.2d 667 (2001), No. 9, September Term, 2001 (filed Oct. 17, 2001),[1] construed L.E. § 3–501 in the context of profit sharing promised to the employee conditioned upon the profitability of the company and that the employee continued to be employed after two years. Central to the Court's analysis was the language of the statute, "promised for service," the Court concluding that the

---

1. Because *Whiting–Turner* was not filed until after the parties to the instant appeal filed their briefs, the decision was not cited or relied upon by either party. In a letter submitted to the Clerk of this Court the day after the decision in *Whiting–Turner* was filed, however, counsel for appellee, asserting "[*Whiting–Turner* ] directly supports the position of Medex ...," wrote, in part,

> Applying this holding to the *Medex* case, it is undisputed that Medex's Incentive Pay Plan clearly stated that to receive additional compensation under the Plan, the employee had to be employed at the time of payout. Because, McCabe voluntarily terminated his employment prior to the payout date, he is *not* entitled to any additional compensation.

conditions of employment are determined in advance of the employment. Ultimately, the Court of Appeals held:

When the petitioner hired the respondent, the parties agreed on a salary and, after two years of employment and depending on the profitability of the company, profit sharing. Had the respondent been with the petitioner for two years when the decision was made to offer him a bonus and had the financial condition of the petitioner justified it, there would be no doubt of the respondent's entitlement, that he would have earned the distribution in this case. That is so because sharing in the profits of the company after two years was promised as part of the respondent's compensation package. Here, however, the petitioner decided to give the respondent a bonus before he had been employed for two years. Where such remuneration is not a part of the compensation package promised, it is merely a gift, a gratuity, revocable at any time before delivery.

*Id.* at p. 9 (citations omitted).

In the case *sub judice,* we are called upon to examine whether commissions set forth in an employer's commission schedule constitute a wage under the Act, when payment of that commission is contingent upon the employee still being employed on the date of payment. The principal distinctions between *Whiting–Turner* and the case at hand are that (a) the compensation package promised by Whiting Turner in exchange for Fitzpatrick's employment did not include the bonus at issue, whereas the commissions at issue in the instant case were agreed upon prior to the commencement of appellant's employment and (b) under Medex's compensation schedule, receipt of commissions was dependent on the achievement by the employee of specific goals. By contrast, Whiting Turner offered profit sharing upon the completion of a two-year employment period, based on the success of the employer.

The Whiting Turner employment agreement consisted of "a weekly salary and, after two years of employment and depending upon the profitability of the company, profit sharing." Unlike the Whiting Turner agreement, appellant was to re-

ceive an annual salary of $49,000 *plus commissions.* The commissions were to be earned from February 1, 1999, the beginning of the Fiscal Year at issue, to January 31, 2000, the termination of the Fiscal Year.

■ The Court of Appeals in *Whiting–Turner,* as must we, bottomed its "[r]esolution of this case [upon a construction of] ... § 3–501(c)." Proceeding from the definition of "wages," expressed in, § 3–501, the Court opined that "what is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, *that is promised in exchange for the employee's work.*" (Emphasis added.) Stated otherwise, in order to be considered a wage under the Act, the compensation must have been "promised for service." The "bonus" in *Whiting–Turner* was not promised for service.

■ The possibility of receiving that bonus was to be determined at a later date—two years hence. The commissions promised appellant, however, were unambiguously promised for service, the amount received having been directly related to the amount of sales completed. According to the bright line test announced in *Whiting–Turner,* "[o]nce a bonus, commission, or fringe benefit has been promised as a part of the compensation for service, the employee [is] entitled to its enforcement as wages." In the event "such remuneration is not a part of the compensation package promised, it is merely a gift, a gratuity, revocable at any time before delivery." Under this test, McCabe's commissions were promised for his service, therefore they constitute a "wage" under § 3–501(c) of the Act.

Another important distinction between *Whiting–Turner* and the instant case is the "incentive" arrangement offered by the two employers. The employee in Whiting Turner was not earning any incentive pay during the established period; rather, only upon the conclusion of the two-year period would a determination be made, based on the success of the company.

In the case at hand, the employee completed all of the tasks required of him prior to the conclusion of the Fiscal Year at issue: closing his sales, ensuring that the customers received the product, and securing payment from the customers. As of January 31, 2000, there was nothing more he could have done to facilitate the receipt of his commissions; his employer, nevertheless, placed an additional condition upon payment. In order to receive the incentive pay, he was required to remain employed through the arbitrary date of March 31, 2000, a date wholly unrelated to the completion of the employee's duties.

The incentive structures of *Whiting–Turner* and the instant case are diametrically opposed: one conditioned upon the employee's diligence, the other conditioned upon the profitability of the employer. Clearly, McCabe's commissions constituted "remuneration promised for *service*," under § 3–501(c) of the Act.

■ Because we hold that appellant's claim against appellee is governed by § 3–505 of the Act, he may recover the commissions sought, totaling $32,850.73. Therefore, the trial court's decision to the contrary constituted clear error. In light of our holding that § 3–505 of the Act provides appellant with the ability to receive the actual wages withheld, we must next determine whether § 3–507.1 of the Act would permit him to recover "additional (up to treble) damages, attorneys' fees, and costs." *Admiral Mortgage*, 357 Md. at 541, 745 A.2d 1026. That section states, in relevant part:

> [I]f an employer fails to pay an employee in accordance with [L.E.] § 3–502 or [L.E.] § 3–505 of this subtitle, after [two] weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages. . . .

> If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not

exceeding [three] times the wage, and reasonable counsel and other costs.

L.E. § 3–507.1. Noting the fact that this issue was hotly contested at the trial level and the considerable amount of analysis required in arriving at today's decision, we conclude that appellee withheld the commissions as a result of "a bona fide dispute," rather than "in violation of this subtitle." We, accordingly, hold § 3–507.1 of the Act to be inapplicable to appellant's situation and, as a result, limit his recovery to the actual wages withheld.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**