811 A.2d 297

MEDEX

v.

Timothy J. McCABE.

No. 2, Sept. Term, 2002.

Court of Appeals of Maryland.

Nov. 14, 2002.

Jody Maier (Jeffrey Pritzker of Margolis, Pritzker & Epstein, P.A., on brief), Towson, for petitioner/cross-respondent.

Jeffrey L. Forman (Bruce E. Kauffman of Kauffman and Forman, P.A., on brief), Towson, for respondent/cross-petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

This appeal arises out of a suit initiated by Timothy J. McCabe, against his former employer, Medex, to recover unpaid wages under the Maryland Wage Payment Collection Law (the Act), Maryland Code (1991, 1999 Repl.Vol.) § 3–501 *et seq.* of the Labor and Employment Article.[1] Under McCabe's employment contract, payment of the "incentive

---

1. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1991, 1999 Repl.Vol.) § 3–501 *et seq.* of the Labor and Employment Article.

fees" was conditioned upon the employee being employed on the date of payment. We also granted McCabe's cross-appeal, raising the question of whether he was entitled to a jury trial to determine whether Medex's withholding of his wages was in violation of the statute and, thus, entitling him to up to three times the wage, reasonable counsel fees and other costs.

We agree with the holding of the Court of Special Appeals that the incentive payments were wages earned by the employee and, thus, McCabe was entitled to recover as wages the incentive fees under the Act. We agree with McCabe, however, that he was entitled to have a jury determine whether there existed a bona fide dispute entitling him to treble damages.

## I. Background

McCabe was employed as a sales representative for Medex, a medical supplies manufacturer, from November 18, 1998 through February 4, 2000. He earned a salary of $49,000.00 plus incentive fees that were paid out under a series of incentive compensation plans. McCabe received an employee manual that included the following provision with regard to the incentive plans: "Payment from all Company incentive compensation plans is conditional upon meeting targets and the participant being an employee at the end of the incentive plan (generally the fiscal year) *and being employed at the time of actual payment.*" (Emphasis added).

For Fiscal Year 2000, Medex adopted an Account Manager Sales Incentive Plan. Consistent with the employee handbook, the terms of the plan made payment of incentive fees conditional upon continued employment at the time of payment. The Fiscal Year ended on January 31, 2000. Four days later McCabe resigned from his employment with Medex.[2] Payments under the incentive plan did not occur until March 31,

---

**2.** According to Medex, his resignation was precipitated by a statement in December, 1999 by Medex's president that the company was for sale and that he could not assure the sales force that their jobs would be secure if Medex were sold. McCabe anticipatorily sought another job and left Medex for it.

2000. At that time, pointing to the condition in the plan, Medex refused to pay McCabe fees under the plan.

McCabe filed suit in the District Court of Maryland, sitting in Baltimore County, demanding fees owed, determined by agreement between the parties to be $32,850.73, as well as treble damages, pre-judgment interest, costs, and attorneys' fees. Medex prayed a jury trial and the case was transferred to the Circuit Court for Baltimore County. After denial of the parties' cross-motions for summary judgment, they filed a Joint Motion to Bifurcate, requesting an initial ruling on the applicability of the Act. According to the motion, the case would proceed to trial only in the event the court found Medex in violation of the Act, and in the following jury trial, McCabe would seek additional recovery for attorneys' fees and treble damages under § 3–507.1(b) of the Act.[3] The trial court found the Act inapplicable and entered judgment in favor of Medex.

McCabe noted a timely appeal to the Court of Special Appeals. The Court of Special Appeals reversed the circuit court. *See McCabe v. Medex*, 141 Md.App. 558, 786 A.2d 57 (2001). Designating the incentive fees "commissions," the intermediate appellate court determined that McCabe had earned them as wages under § 3–501(c) of the Act, "and the additional conditions Medex placed on its employees were, therefore, invalid in light of Maryland statutory and common law." *Id.* at 564–65, 786 A.2d at 61. The Court of Special Appeals went on to consider whether there existed a bona fide dispute that would preclude an award of treble damages, attorneys' fees, and costs. It found that such a bona fide dispute existed, "[n]oting the fact that this issue was hotly contested at the trial level and the considerable amount of analysis required at arriving at [its own] decision." *Id.* at 570,

---

3. Section 3–507.1(b) reads as follows:

   "*Award and costs.*-(1) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

786 A.2d at 64. The Court of Special Appeals, therefore, limited McCabe's recovery to the actual wages withheld.

We granted certiorari, *Medex v. McCabe,* 368 Md. 239, 792 A.2d 1177 (2002), and now consider whether incentive fees that are a part of the employee's promised compensation for work performed, but are not yet due for payment at the time of the employee's resignation, must be paid, despite an express term in the employment contract to the contrary. We hold that they must. We also granted McCabe's cross-petition to address the finding by the Court of Special Appeals of a bona fide dispute. Determination of the existence of a bona fide dispute between McCabe and Medex is an issue to be determined by a jury.

II. Incentive Fees as "Wages" Under § 3–501(c)

Determination that the incentive fees at issue in this case are governed by the terms of the Act requires a preliminary finding that the incentive payments constitute "wages" under § 3–501(c). The statutory definition of wage is very broad:

"(1) 'Wage' means all compensation that is due to an employee for employment.

(2) 'Wage' includes:

(i) a bonus;

(ii) a commission;

(iii) a fringe benefit; or

(iv) any other remuneration promised for service."

§ 3–501(c). Commissions are clearly within the scope of the Act, and a cause may arise under the Act for an employer's failure to pay commissions earned during employment yet not payable until after resignation. *See Admiral Mortgage, Inc. v. Cooper,* 357 Md. 533, 540, 745 A.2d 1026, 1029 (2000); *Magee v. DanSources Technical Serv., Inc.,* 137 Md.App. 527, 574, 769 A.2d 231, 258–59 (2001). In *Admiral Mortgage,* we stated:

"Under that law, the term 'wage' includes a commission. § 3–501(c)(2). Section 3–505, dealing with the payment of

wages on termination of employment, requires an employer to pay all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated. Under that statute, if [the employee] was due a commission on the closing of a loan generated or developed by him, the commission should have been paid, at the latest, when the loan was closed. Section 3–507.1 gives an employee a civil cause of action to recover wages withheld in violation of § 3–505."

357 Md. at 540–41, 745 A.2d at 1029–30 (footnote omitted).

■ Medex argues that the "incentive fees" were not simply commissions, but more akin to a bonus for continued employment. Even were this so, and evidence produced in the record seemed to belie this contention, § 3–501(c)(2) expressly includes "bonus" as an example of compensation that may fall within the ambit of the Act. This is in contrast to other jurisdictions where bonuses are separated from wages into a category of fringe benefits. *See e.g.* Mich. Comp. Laws Ann. § 408.471 (2002) (listing "commission" within the definition of "wages," and "bonus" within the definition of "fringe benefits"). In Maryland, not all bonuses constitute wages. *See Whiting–Turner v. Fitzpatrick,* 366 Md. 295, 783 A.2d 667 (2001). We have held that it is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage. *Id.* at 303, 783 A.2d at 671. Where the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition. *Id.,* 783 A.2d at 671–72.

In *Whiting–Turner,* the employee argued that he was entitled to a bonus share of the employer's profits. The employee was hired with a salary and an opportunity to join in profit sharing after two years of service. The employer offered to begin the profit sharing early, but the employee resigned prior to payment. As the Court found, the money sought was not compensation for the employee's services, but merely a gratuity, revocable at any time before delivery. *Id.* at 306, 783 A.2d

at 673. The accelerated bonus had not been "promised for service" and hence could not be wages. *Id.* at 305, 783 A.2d at 672.

Such a situation stands in marked contrast to the case *sub judice*. In this case, the incentive fees were related directly to sales made by the employees during a defined fiscal year. McCabe had performed all the work necessary to earn the fees, and Medex had registered the sales. In the terminology of the incentive plan itself, some of the incentive fees "begin to earn" at meeting 80% of a target goal, while another "[i]ncentive begins" upon the sale of certain goods. The work of the employee may have preceded the payment date of the fees, but the fees were compensation for work performed, and, thus, wages under the Act.

### III. "Wages Due" Under § 3–505

Having determined that the incentive fees constitute wages, we must determine whether they are owed to McCabe as "wages due." Medex urges us to accept the reasoning of the Circuit Court that found that the wages could not become due unless the employee were employed at the date of payment. The language of both the employment contract and incentive plan states that, to be eligible for the incentive fees, the employee must still be employed at the date of payment. McCabe signed off on this language. Under common law contract principles, such an employment contract provision would have been sufficient to deny the employee the incentive fees. *See Maryland Credit Fin. Corp. v. Hagerty*, 216 Md. 83, 89–90, 139 A.2d 230, 233 (1958) (enforcing clear language of an employment contract that an employee had to remain in the employer's service until year's end to receive a bonus). Nonetheless, the Court of Special Appeals refused to enforce this provision and, upon determining the intent of the Legislature in effectuating the Act, we agree.

We have often stated that the paramount rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *See e.g, Derry v. State*, 358 Md. 325, 335,

748 A.2d 478, 483 (2000). We begin our analysis of § 3–505 by looking at the plain meaning of the words of the statute. *See Whiting–Turner*, 366 Md. at 301, 783 A.2d at 670; *Harris v. State*, 353 Md. 596, 606, 728 A.2d 180, 184 (1999). When the words are clear and unambiguous, there is no need to search further. *See Whiting–Turner*, 366 Md. at 301, 783 A.2d at 670; *Degren v. State*, 352 Md. 400, 417, 722 A.2d 887, 895 (1999). When we find ambiguity in the language of the statute, we look to the intent as evidenced in the legislative history or other sources extraneous to the statute itself. *See id.*, 722 A.2d at 895; *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590, 594 (1992). We cannot modify an unambiguous statute, by adding or removing words to give it a meaning not reflected by the words the Legislature chose to use, "nor engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. Nations-Bank*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n*, 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000). Nor may we render, through our analysis, any portion of the statute superfluous or nugatory. *See Taylor*, 365 Md. at 181, 776 A.2d at 654; *Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 691, 672 A.2d 639, 644–45 (1996). It is clear, however, that the statute must be given a reasonable interpretation, "not one that is illogical or incompatible with common sense." *Whiting–Turner*, 366 Md. at 302, 783 A.2d at 671; *State v. Brantner*, 360 Md. 314, 322, 758 A.2d 84, 88–89 (2000). In consideration of the issue before us, our reading of this one portion of the Act, § 3–505, must be construed in the context of the entire statutory scheme of the Wage Payment and Collection Law. *Whiting–Turner*, 366 Md. at 302, 783 A.2d at 671; *Blondell*, 341 Md. at 691, 672 A.2d at 645.

Section 3–505 states as follows:

"Each employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would

have been paid the wages if the employment had not been terminated."

Restated simply, where an employee earns wages under the Act, the employer must pay them, regardless of the ensuing termination of the employee. In *Whiting–Turner* we looked at the language of § 3–505 and concluded that:

"what is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, that is promised in exchange for the employee's work."

366 Md. at 303, 783 A.2d at 671. The Act's mandate is clear, and complies with the public policy that was the origin of the Act. We have discussed the legislative purpose behind the Wage Payment and Collection Law on more than one occasion. *See e.g., Battaglia v. Clinical Perfusionists,* 338 Md. 352, 658 A.2d 680 (1995); *Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303 (2001). The principal purpose of the Act "was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Battaglia,* 338 Md. at 364, 658 A.2d at 686.

Contractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts. As the Court of Special Appeals noted, "a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *McCabe,* 141 Md.App. at 566, 786 A.2d at 62. *See also, State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 643, 516 A.2d 586, 592 (1986).[4]

---

4.  Other states have included express language in their wage payment laws to prevent statutory contravention by private agreement or contract of the employer and employee. *See e.g.,* Cal. Lab.Code § 219(a) (2002) ("[N]o provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."); W. Va.Code Ann. § 21–5–10 (2001) ("Provisions of law may not be waived by agreement"); N.Y. Labor Law § 191(2) (2002) ("No employ-

Maryland is one of forty-two states to enact wage payment laws, and courts across the country have found such laws to be expressions of state public policy. In one of the earliest cases to consider a wage payment statute, the Supreme Court of Washington, in 1923, found that a conflicting provision in an employment contract was void as against public policy. *Burdette v. Broadview Dairy Co.*, 123 Wash. 158, 212 P. 181 (1923). The employment contract required that an employee give two weeks notice of resignation, or else wages would not become due and payable for thirty days after departure. Despite the employer's assertions that the provision was an important measure to protect its business, the court stated that "[i]t is clear that the statute establishes a rule of public policy, and that the natural right of the employer and the employee to contract between themselves must yield to what the legislature has established as the law." *Id.* at 182–83.

More recently, in *Tuttle v. Geo. McQuesten Co.*, 227 A.D.2d 754, 642 N.Y.S.2d 356 (N.Y.App.Div.1996), the appellate division of the Supreme Court of New York considered a case similar to the case *sub judice* under that state's payment of wages law, N.Y. Labor Law § 190 (1992). The employment plan called for incentive compensation, termed "hold over monies," to be payable in installments in the years following the year they were earned. The plan further required that the employee be employed by the employer at the time the payments came due. After finding that the compensation did indeed constitute "wages" under the act, the court ruled that the employee had a "vested right" to the money at the time of his resignation, and that "[u]pholding a forfeiture thereof would be violative of public policy." *Id.* at 358.

Likewise, in *O'Brien v. Encotech Constr. Serv., Inc.*, 183 F.Supp.2d 1047 (N.D.Ill.2002) (interpreting Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* (2002)), the District Court for the Northern District of Illinois held that releases of claims under the Illinois Act were void as

---

ee shall be required as a condition of employment to accept wages at periods other than as provided in this section").

a matter of law. Referring to a line of Illinois cases on minimum wage and wage payment laws, the court stated: "Such laws provide a floor, both as to amount and frequency, below which parties are precluded from contracting with respect to payment for labor services. Such laws by their very nature deny parties the right to contract for the payment of wages.... [I]t is their manifest public policy to limit freedom of contract with respect to the payment of wages in order to serve more important public purposes." *Id.* at 1049.

In accordance with the policy underlying the Maryland Act, an employee's right to compensation vests when the employee does everything required to earn the wages. Medex argues that the contractual provision does not conflict with the right to payment of wages, because the wages never became due. According to Medex, no wage has been earned without the continuous employment required by the employment policy. Such reading leads to results that are both unreasonable and illogical.

First, if Medex's plan is acceptable, then employees necessarily will be incapable of receiving *some* portion of the incentive fees for the sales they made. Had McCabe continued his employment until the payment date of March 31st, he would have been denied all incentive fees for sales made from February 1st until that date. A contract that necessitates the deprivation of some portion of the fees worked for by the employee contravenes the purpose of the Act.

Second, while Medex stated that the company paid all incentive fees to workers that it terminated, nothing in Medex's reading of the statute and incentive plan necessitates this result. Under its reading, employees who leave involuntarily, perhaps because they were fired or died, would have failed to achieve the requirements of the incentive plan, and thus not have "wages due." Some states have separate provisions for voluntary and involuntary departures by employees. *See e.g.* Mich. Comp. Laws Ann. § 408.475 (2002). The Maryland statute makes no such distinction, giving equal protection

to all departed employees. *See* § 3–505. That Medex chose to implement its own hierarchy of entitlement is of no consequence to the reading of the statute. Here, the employee's right to the payment of wages vests without satisfaction of the provision of continued employment. To hold otherwise would place the rights of employees to these wages at the whim of the employer, who could simply terminate any at-will employee whose incentive fees it didn't wish to pay.

Medex argues, in the alternative, that absent an enforceable requirement for McCabe to continue employment until the incentive is paid, the compensation plan represents an unenforceable gratuity. There is no enforceable contractual obligation created when an employer offers an employee a *bonus* for doing that which the employee is already required to do. *See Johnson v. Schenley Distillers Corp.*, 181 Md. 31, 28 A.2d 606 (1942) (reviewing cases). Without consideration, in the form of a promise to continue to work, the promise to pay additional fees for sales that previously were required is not part of any valid contract. This argument is inapposite because the incentive plan in the instant case was more than a bonus offered to already-employed workers.

The record reflects that Medex represented these incentive fees as a portion of the employee's "Total Target Cash Compensation." According to Medex's documents, the incentive fees were supplemental to the fixed salary as a combined measure of compensation. Successive annual incentive plans were in operation throughout the duration of McCabe's employment. The right to future commissions formed part of the inducement for his initial and continuing employment.

### IV.   Bona Fide Dispute

Section 3–507.1 governs the civil remedy upon violation of the Act by an employer. It states, in relevant part, as follows:

"(b) *Award.*—(1) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result

of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

§ 5–507.1.

The Court of Special Appeals held that the parties' disagreement over the incentive payments constituted a bona fide dispute. *McCabe,* 141 Md.App. at 570, 786 A.2d at 64. McCabe would, therefore, be entitled to recover only the unpaid wages under § 3–507.1(a) and could not recover treble damages, counsel fees or other costs. The intermediate appellate court cited the conflict between the trial court and its own decision, and the "hotly contested" nature of the proceedings, as evidence of a good faith dispute. *Id.,* 786 A.2d at 64.

We discussed the nature and definition of a "bona fide dispute" under this statute in *Admiral Mortgage,* 357 Md. 533, 745 A.2d 1026. In that case, the employer argued that it had been improper to submit the issue to the jury absent evidence of bad faith and that application of the provision was a matter for the judge, rather than the jury. We noted that "[w]hat constitutes a 'bona fide dispute,' of course, depends upon the circumstances." *Id.* at 541, 745 A.2d at 1030. We reasoned as follows:

"All of the definitions articulated by the courts focus really on whether the party making or resisting the claim has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing. The issue is not whether a party acted fraudulently; fraud is certainly inconsistent with the notion of 'bona fide' or 'good faith,' but it is not required to establish an absence of good faith. The question, simply, is whether there was sufficient evidence adduced to permit a trier of fact to determine that [the employer] did not act in good faith when it refused to pay commissions to [the employee] on the five loans that closed after he terminated his employment."

*Id.* at 543, 745 A.2d at 1031.

Reviewing the facts of the case, we found evidence sufficient to question the employer's credibility in withholding wages.

*Id.* at 543–44, 745 A.2d at 1031. Thus, the issue was not one of law to be decided summarily, but rather properly reserved for resolution by the jury. On the second issue, as to whether judge or jury was to make the award of damages, we found that "[w]hether punitive or compensatory in nature, the determination of discretionary damages is quintessentially a matter for the trier of fact," and therefore, the determination of a bona fide dispute and award of treble damages was for the jury. *Id.* at 550, 745 A.2d at 1035; *see also Baltimore Harbor Charters*, 365 Md. at 396, 780 A.2d at 320–21 (noting that "[t]he existence of a bona fide dispute under § 3–507.1 is a question of fact left for resolution by the jury, not the trial judge"). The determination of attorneys' fees and costs, on the other hand, were matters for the judge. *Admiral Mortgage*, 357 Md. at 553, 745 A.2d at 1036.

Before this Court, Medex argues that the withholding of wages was based solely upon a contractual provision it believed in good faith to be enforceable. While there is little in the record to dispute this claim, this is not the proper forum to make such an assessment.[5] In this case, the Court of Special Appeals usurped the role of the jury. It made no specific findings as to the existence of a bona fide dispute, nor could it, based on the record. The trial court, at the urging of the parties, bifurcated the trial, reserving the issue of damages for decision by the jury. Without evidence developed at trial, ruling on the issue as a matter of law was improper.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF*

---

5. Furthermore, there are references to at least some compensation, $3,600 under a separate "Show Me The Money" compensation plan, which Medex did not pay over to McCabe until over a year after his resignation. The withholding of this money, agreed by both parties to be rightfully McCabe's, might itself be evidence of a lack of good faith on the part of Medex. *See Baltimore Harbor Charters*, 365 Md. at 397–98, 780 A.2d at 321–22 (stating that "the penalty provision of § 3–507.1 … will apply to those amounts which were not in dispute but for which the employer failed to make timely payment upon termination as specified in § 3–505").

*THE CIRCUIT COURT FOR BALTIMORE COUNTY AND
REMAND THE CASE TO THE CIRCUIT COURT FOR
FURTHER PROCEEDINGS IN ACCORDANCE WITH
THIS OPINION.   COSTS IN THIS COURT AND THE
COURT OF SPECIAL APPEALS TO BE PAID BY ME-
DEX.*

Dissenting Opinion by BELL, Chief Judge, in which
CATHELL, Judge, joins.

I do not agree with the conclusion drawn by the majority
that the incentive payments at issue in this case were wages
promised, and due, as part of the compensation for service of
Timothy J. McCabe, the respondent.   Consequently, I also do
not agree either that the Maryland Wage Payment Collection
Law, Maryland Code (1991, 1999 Repl.Vol.) § 3–501 *et seq.* of
the Labor and Employment Article, is applicable or that any
payments are due the respondent.

The case *sub judice* cannot be distinguished from our
decision in *The Whiting–Turner Contracting Co. v. Fitz-
patrick*, 366 Md. 295, 783 A.2d 667 (2001).   We noted in
*Whiting–Turner*, that § 3–505 of the Act [1] is applicable only
when wages have been promised as part of the compensation
for employment and all conditions agreed to in advance for
earning those wages have been satisfied.   *Id.* at 305, 783 A.2d
at 672.   The fundamental disagreement between the parties,
in the case *sub judice*, is whether the incentive payments were
properly construed as a commission, rather than a bonus/gra-
tuity, and whether those payments were promised to Mr.
McCabe for his service.   The trial court found for Medex, the
petitioner, determining that the payments were not commis-
sions.   Despite this factual determination by the trial court,

---

1.   Maryland Code (1991, 1999 Repl.Vol.) § 3–505 of the Labor and
   Employment Article requires employers, upon the termination of an
   employee's employment, to pay that employee, or his or her authorized
   representative, "all wages due for work that the employee performed
   before the date of termination of employment, on or before the day on
   which the employee would have been paid the wages if the employment
   had not been terminated."

the Court of Special Appeals, and now this Court, reversed. Apparently, believing that designating the payments as "commissions" would justify reversal on the grounds that commissions are sufficiently tied to an employee's efforts on behalf of the employer, the majority ignores that the statute requires a promise of wages in exchange for service. No such promise was made by Medex. Consequently, I would hold that the respondent was not entitled to the payments under the statute. For that reason, I dissent.

## I.

The initial determination of whether the incentive payments were a commission or a gratuity was a question of fact. Both the petitioner and the respondent argued in the trial court their respective positions as to how the disputed payments should be classified. In that court, it was undisputed that the respondent was paid a yearly salary of $49,000.00. Finding for the respondent, the majority states that payments made under the Incentive Plans were "commissions," expressly disagreeing with the petitioner that the payments were "more akin to a bonus for continued employment." *See Medex v. McCabe*, at 36. The majority goes on to state further that the evidence produced at trial "seemed to belie" the contention that the payments were akin to a bonus. *Id.* The opinion and order of the trial was to the contrary, however. It found that the respondent was not a "commissioned sales representative, nor paid a draw against commissions."

Unless the determinations of the trial court are clearly erroneous, an appellate court will "not set aside the judgment of the trial court on the evidence . . . and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8 131(c).[2] In addition, appel-

---

2. Maryland Rule 8–131 provides:

"(c) Action Tried Without a Jury. When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgement of the trial court on the evidence unless clearly erroneous, and will give due

late courts are required to consider the evidence in the light most favorable to the prevailing party. *Urban Site v. Levering,* 340 Md. 223, 230, 665 A.2d 1062, 1065 (1995). Absent a contract provision to the contrary, and the record is devoid of any such evidence, any monies additional to his salary, paid to the respondent were simply gratuities. It is simply incorrect that payments made under the Incentive Plan were commissions that the petitioner paid employees who were employed on the date of payout.

## II.

Whether, or not, the payments are categorized as commissions or bonuses, the critical determination to be made is whether the petitioner promised the payments to the respondent in exchange for the respondent's service as an employee. We interpreted the Maryland Wage Payment Collection Act in *Whiting–Turner.*

In *Whiting–Turner,* this Court held that § 3–505 is applicable only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied. We explained:

"[t]he conditions of employment are determined in advance of the employment. What, if anything beyond the basic salary, the employee will receive is a matter for discussion, consideration and agreement. If a bonus is to be made part of the wage package, it can be negotiated and included in what has been promised. Similarly, whether commissions are to be paid or what fringe benefits attach are a matter for agreement in advance of the employment or to become a part of the undertaking during the employment. Once a bonus, commission or fringe benefit has been promised as part of the compensation for service, the employee would be entitled to its enforcement as wages. Consequently, this

regard to the opportunity of the trial court to judge the credibility of witnesses."

interpretation of § 3–501(c), rather than rendering the language of the statute devoid of meaning, gives it a very definite one and creates a bright line test that is easily applied."

*Whiting–Turner*, 366 Md. at 305, 783 A.2d at 672–73. I fear that the bright line that we identified has been blurred by the decision in this case.

The majority states "[w]here the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition" of the statute. *Medex, supra*, at 36. This statement of our holding in *Whiting–Turner* is stated too broadly. Many, if not most, payments made by an employer to an employee in addition to periodic salary, will be dependent upon the employee's efforts. This alone does not, and logically cannot, bring that additional payment within the scope of § 3–501(c).[3] Whether express or implied, employers typically tie the payment of a bonus, a commission or a fringe benefit to a cognizable means of assessing the individual contributions of their employees to the organization. The bright-line test announced in *Whiting–Turner* was a "promise" of remuneration in exchange for service.

Here, the payments under the Incentive Plan made to the respondent are attenuated by a clear qualification: the respondent's continued employment. The petitioner's duty to pay is clearly conditional. We noted in *Whiting–Turner* that the "conditions of employment are determined in advance of the employment." *Id.* at 305, 783 A.2d at 672. The fact that the petitioner could choose to adopt, or not adopt, an incentive plan in any fiscal year belies the contention that the respondent was promised, at the inception of the employment term,

---

3. Section 3–501(c) defines "wages" as follows:
    "(c) Wage.—(1) 'Wage' means all compensation that is due to an employee for employment.
    "(2) 'Wage' includes:
    "(i) a bonus;
    "(ii) a commission;
    "(iii) a fringe benefit; or
    "(iv) any other remuneration promised for service."

the incentive payments as part of his compensation. More-over, if the incentive payments became a part of the promised compensation package subsequent to employment, the pay-ments were further conditioned upon the respondent's contin-ued employment. In fact, in all references to the Incentive Plan the respondent's continued service to the petitioner is a condition precedent to any payments under the plan. Thus, those payments cannot definitively be categorized as promised compensation for service.

Despite the trial court's determination, as we have seen, under the majority's analysis the incentive payments are classified as commissions. Pursuant to § 3–505, the commis-sions must have been promised as compensation as part of the employment arrangement. The facts are that the respondent was paid a salary of $49,000.00 for his service, the Account Manager Incentive Plan did not begin until a year after the respondent began his employment, and the petitioner was free to adopt or not adopt an Incentive Plan from time to time. Taken as a whole, these facts cast doubt upon the majority's conclusion and its interpretation of the agreement reached by the parties. It is clear, however, as we noted in *Whiting–Turner*, had the respondent been employed with the petitioner when distributions under the Incentive Plan were made to the petitioner's employees, the respondent clearly would have been entitled to the payment. *Id.* at 306–07, 783 A.2d at 673 (noting that the payment of a bonus would be required if the conditions placed on the compensation package had been satisfied).

Whether the incentive payments are construed as commis-sions or a bonus, § 3–505(c) requires "remuneration promised for service" to constitute wages. Where "such remuneration is not a part of the compensation package promised, it is merely a gift, a gratuity, revocable at any time before deliv-ery." *Id.* at 306, 783 A.2d at 673 *quoting Snyder v. Stouffer*, 270 Md. 647, 650, 313 A.2d 497, 499 (1974); *Dulany v. Taylor*, 105 Md.App. 619, 660 A.2d 1046 (1995); *Rudo v. Karp*, 80 Md.App. 424, 429, 564 A.2d 100, 102 (1989). It is undisputed that a salary was earned, and paid to the respondent, up to the

point of his resignation. It is also undisputed that payments under the Incentive Plan did not require that any work in addition to that for which compensation was already being provided by salary. We have held that, where a sales bonus plan did not call for any work to be done by the employee in addition to the work required under the original terms of his employment, the monies promised to the employee under that bonus plan were only a gratuity, which was not enforceable. *Johnson v. Schenley Distillers Corp.*, 181 Md. 31, 36, 28 A.2d 606, 608 (1942).

I respectfully dissent. Judge CATHELL joins in the views herein expressed.